## PEOPLE v. GIACALONE

1. SEARCHES AND SEIZURES—INCIDENT TO ARREST—EVIDENCE—ADMISSIBILITY.

   A blackjack should not have been admitted into evidence and the motion to suppress should have been granted in a trial on the charge of unlawful possession of a blackjack where one of the police officers, lawfully in the defendant's home to serve him with a warrant for another criminal offense, saw a gun in the defendant's downstairs closet, and, when he went to remove it, saw the blackjack in the closet, while at that time the defendant was upstairs with other officers, since the further search of the premises cannot be justified on the ground of concern for the officers' safety, they being in no way apprehensive that the defendant might escape or inflict any injury on any of them and it can reasonably be inferred that a search warrant could have been obtained prior to the arrest based upon information possessed by the officers regarding offensive weapons located where they were found.

2. SEARCHES AND SEIZURES—CONSTITUTIONAL LAW—ILLEGAL SEARCH —RESULTS OF SEARCH.

   No constitutional doctrine permits the validation of an illegal search on the basis of the results it obtains.

Appeal from Wayne, Joseph A. Moynihan, Jr., J. Submitted Division 1 April 15, 1970, at Detroit. (Docket No. 6,767.) Decided June 23, 1970. Leave to appeal denied August 26, 1970. 383 Mich 823.

Anthony Giacalone was convicted of unlawful possession of a blackjack. Defendant appeals. Reversed and remanded.

REFERENCE FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence §§ 408, 412.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, and *Lawrence M. Glazer*, Assistant Attorney General, for the people.

*Louisell & Barris*, for defendant.

Before: QUINN, P. J., and T. M. BURNS and O'HARA,* JJ.

O'HARA, J. The issue raised by this appeal is the admissibility in evidence at trial of a blackjack found by arresting officers who were lawfully in the defendant's home to serve upon him a criminal warrant charging conspiracy to extort.

It is basically the position of the state that a blackjack was found while the police were searching for offensive weapons, a permissible incident of a valid arrest. It is the defendant's position that the search exceeded permissible bounds, and was in reality a device to make an unrestricted search of his home without a search warrant. The blackjack was hanging from a hook in a downstairs clothes closet. It was the officer's testimony that he was able to see a shotgun in the closet and that when he went in to remove it, he saw the blackjack. Other officers had already served the arrest warrant. The defendant was upstairs with the officers who accompanied him to his bedroom to change from pajamas to street clothes. There were six or seven officers in the arrest party including state police, city police and internal revenue agents.

The need of law enforcement officers for protection against armed resistance to arrest is of national concern. We would not be understood to

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23, as amended in 1968.

place any judicial restriction upon their right of self-protection.

In this case, however, the further search of the premises after the warrant was served and the accused was under arrest cannot be justified on the ground of concern for the officers' safety as pointed out by the trial judge.

"The testimony in this record made it most clear to the court that they (the officers) were in no way apprehensive lest the defendant escape or inflict any injury on any of them."

We agree in part with these additional forthright findings of the trial judge:

"The officers testified that they had reliable information that offensive weapons were located in the precise location in which they were found sometime prior to the time the arrest party left the church parking lot. A magistrate was available to them and did issue a search warrant for business premises of the defendant less than six hours prior to his arrest. It can reasonably be inferred that a search warrant could have been obtained prior to the arrest based upon the information possessed by the officers. However, these officers preferred to conduct a search which, *had it not turned up the weapons, would have been a clear violation of an individual's sacred constitutional right to be secure in his own home.*" (Emphasis supplied.)

However, we must disagree with his legal conclusion that the "search * * * had it not turned up the weapons would have been a clear violation of an individual's sacred constitutional right to be secure in his own home".

We know of no constitutional doctrine, judicially approved, which permits the validation of an illegal search on the basis of the results it obtains.

The evidence illegally obtained should not have been admitted, and the motion to suppress should have been granted.

The quoted factual findings of the trial judge, which are supported by the record, distinguish this case from *People* v. *Vito Giacalone* (1970), 23 Mich App 163, and precludes application of that decision to the case at bar.

Reversed and remanded.

All concurred.